UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:23-cv-00031-KDB
(CRIMINAL CASE NO. 5:18-cr-00023-KDB-DCK-1)

| | |
|---|---|
| **ROBERT MICHAEL GEORGE,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**THIS MATTER** is before the Court on the Petitioner's Pro Se Motion to Vacate Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.   BACKGROUND**

On April 18, 2018, Petitioner Robert Michael George ("Petitioner") was charged in a Bill of Indictment with one count of deprivation of rights under color of law in violation of 18 U.S.C. § 242[2] (Count One) and one count of falsification of records in federal investigations in violation of 18 U.S.C. § 1519 (Count Two). [CR Doc. 3: Bill of Indictment]. As to Count One, the Indictment charged that Petitioner was a Police Sergeant with the Hickory Police Department and that he deprived Chelsea Doolittle, a pretrial detainee, of her right to be free from an officer's use of objectively unreasonable force when Petitioner "slammed [Doolittle] face first to the ground,

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 5:23-cv-00031-KDB, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 5:18-cr-00023-KDB-DCK-1.

[2] To be found guilty on this Count, the Government must show "that the defendant (1) willfully (2) deprived another individual of a constitutional right (3) while acting under color of law." United States v. Cowden, 882 F.3d 464, 474 (4th Cir. 2018) (citation omitted).

resulting in bodily injury to [Doolittle]." [Id. at 3]. Petitioner proceeded to trial on these charges. He was found guilty of Count One and not guilty of Count Two. [CR Doc. 36: Jury Verdict].

Before Petitioner's sentencing, a probation officer prepared a Presentence Investigation Report (PSR). [CR Doc. 40]. The Statement of Relevant conduct provided therein, in pertinent part, stated as follows:

> On November 11, 2013, Hickory Police Department (HPD) Lt. Vidal Sipe encountered Chelsea Doolittle around 3:00PM in the Union Square area of downtown Hickory, North Carolina. When Lt. Sipe first saw her, Ms. Doolittle was standing near her car, which was parked in the roadway outside of a parking space. After observing and speaking with Ms. Doolittle, Lt. Sipe called for assistance from an officer who could bring a portable breathalyzer device to the scene. Defendant, a sergeant with the HPD, arrived soon thereafter with the device. Ms. Doolittle refused to take the breathalyzer test, was argumentative with the officers, and failed to follow their commands, so Lt. Sipe arrested her for disorderly conduct and resisting a police officer. Defendant transported Ms. Doolittle, who was in handcuffs, to the HPD for processing, while Lt. Sipe waited at the scene for a tow truck to impound Ms. Doolittle's car.
>
> [ ] Surveillance footage – without audio – from the driveway outside of the HPD sally port shows Defendant drive up to the sally port garage door and park his squad car. Defendant gets out of the car and opens the rear door where Ms. Doolittle is sitting. Defendant stands next to the door for several seconds, seemingly waiting for Ms. Doolittle to get out of the car. <u>Then, Defendant reaches into the car with both arms and grabs Ms. Doolittle. In one fluid motion, Defendant lifts Ms. Doolittle out from the back seat and slams her down, face first, onto the driveway while her hands are still handcuffed behind her back.</u> Ms. Doolittle then bounces and rolls approximately five to six feet. After closing his squad car doors and retrieving her hat, Defendant jerks Ms. Doolittle up from the ground and walks her into the sally port.

[CR Doc. 40 at 4 (emphasis added)]. The probation officer recommended a base offense level of 19, a six-level enhancement because the offense was committed under color of law, a two-level enhancement because the victim was physically restrained during the offense, and a two-level enhancement for obstruction of justice, for a total offense level of 29. [Id. at ¶¶ 23-25, 27, 31]. With a criminal history category of I, the guidelines recommended a range of 87 to 109 months' imprisonment. [Id. at ¶¶ 36, 57].

2

Petitioner was sentenced on October 15, 2019. The Court generally accepted the PSR, but it removed the two-level obstruction of justice enhancement, which reduced the total offense level to 27 and yielded a guidelines range of 70 to 87 months. [CR Doc. 54 at 1: Statement of Reasons]. The Court varied below the guideline range and sentenced Petitioner to a term of four years' probation on Count One and no custodial sentence. [CR Doc. 53 at 2: Judgment]. In analyzing the 18 U.S.C. § 3553(a) factors, the Court rejected the description of the offense set forth in the PSR. [CR Doc. 55 at 27: Sentencing Tr. ("[T]he statement of the offense in the presentence report is not correct and at no time did Mr. George intend to injure or otherwise harm Ms. Doolittle."). The Court expressed its view that "Mr. George did not lift Ms. Doolittle out from under the backseat and slam her down face-first on the driveway." [CR Doc. 55 at 27]. Rather, the Court found it "obvious" from the surveillance video that George "lost his grip" on Doolittle and that Doolittle then fell to the ground either because of "the force with which [George] pulled her out of the car, or perhaps because of her inebriated condition she was unable to keep her balance and fell forward." [Id. at 27-28]. In the Court's view, Petitioner's actions led to as "close to an accidental injury … as you can get and still wind up violating that statute." [Id. at 31-32]. The Court concluded that the offense level "greatly overstates the seriousness of the offense. [Id. at 29]. Over the Government's objection and based on its view of the incident and analysis of the § 3553(a) factors, the Court sentenced Petitioner to a variance of four years' probation. [Id. at 33].

The Government appealed. [CR Doc. 56]. While the appeal was pending, the Court granted Petitioner's pro se motion for early termination of his term of probation/supervised release "[f]or good cause shown," effective immediately. [CR Docs. 72, 73]. Five months later, the Fourth Circuit issued its opinion. United States v. George, No. 19-4841, 2021 WL 5505404 (4th Cir. Nov. 24, 2021). The Fourth Circuit found that the Court "based its sentence on its view that George

3

Case 5:23-cv-00031-KDB    Document 2    Filed 03/16/23    Page 3 of 6

acted 'almost accidentally,'" which was contrary to the jury's conviction under 18 U.S.C. § 242. That is, "[b]ecause the jury found George guilty of violating § 242, the jury necessarily found that he violated Doolittle's constitutional rights either intentionally or with a reckless disregard." Id. at *3. The Fourth Circuit also offered that, on its viewing, "the video shows George pull Doolittle out of the patrol car and slam her on the pavement." Id. at *4. The Fourth Circuit found that the Court's four-month probation sentence was procedurally and substantively unreasonable, vacated the sentence, and remanded the case to this Court "for resentencing before a different district judge." Id. at *6.

On remand, Petitioner was resentenced by the undersigned on February 17, 2022, in accordance with the Fourth Circuit's instructions. The Court varied below the recommended guideline range and sentenced Petitioner to a term of imprisonment of 36 months. [CR Doc. 84 at 2: Amended Judgment; CR Doc. 85: Statement of Reasons]. As grounds for the downward variance, the Court stated that it had considered all evidence in the case, the sentencing guidelines, and the factors in 18 U.S.C. § 3553(a), and "[b]ased on an individualized analysis of [Petitioner's] case … determined that a sentence of 36 months was appropriate." [CR Doc. 85 at 3]. Petitioner did not appeal.

On February 23, 2023, Petitioner filed the pending motion to vacate under § 2255. [CV Doc. 1]. As grounds, Petitioner argues that (1) his Fifth Amendment right to be free from double jeopardy was violated because he "was sentenced and punished multiple times on the same criminal case; and (2) he received ineffective assistance of counsel because his trial attorney failed to raise the double jeopardy issue at resentencing or consult Petitioner about appealing the double jeopardy issue. [CV Doc. 1 at 4-5, 7]. Petitioner does not specify the relief he seeks, [see CV Doc. 1 at 12], but it appears that he wants his sentence vacated.

4

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

Under 28 U.S.C. § 2255, a petitioner is entitled to relief when his original sentence "was imposed in violation of the Constitution or laws of the United States, or [when] the court was without jurisdiction to impose such sentence, or [when] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Petitioner is entitled to no such relief here.

The Fifth Amendment's Double Jeopardy Clause prohibits anyone from being prosecuted twice for substantially the same crime. It provides, "No person shall … be subject for the same offense to be twice put in jeopardy of life and limb." U.S. CONST. amend. V. The imposition of a more severe sentence on remand, however, does not violate the Double Jeopardy Clause. See United States v. DiFrancesco, 449 U.S. 117, 136, 101 S.Ct. 427 (1980) ("The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence."). Petitioner's Fifth Amendment rights were not violated at resentencing. Moreover, his attorney was not ineffective for not raising this argument at resentencing or for not consulting Petitioner on what would have been a meritless appeal. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Roe v. Flores-Ortega, 528 U.S. 470, 480, 120 S.Ct. 1029 (2000).

## IV. CONCLUSION

For the foregoing reasons, the Court will deny and dismiss Petitioner § 2255 motion.

**IT IS, THEREFORE ORDERED** that:

(1) Petitioner's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1] is **DENIED** and **DISMISSED**.

(2) **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED.**

Signed: March 16, 2023

Kenneth D. Bell
United States District Judge